**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

                                    :

                                    :     Case No.:  10-CV-____  ( ____ )

INDUSTRIAL RISK INSURERS,           :

                     Petitioner,     :

            -against-           :

7 WORLD TRADE CENTER, L.P.,      :

                    Respondent.   :

                                      :

-----------------------------------------------------------x

**PETITIONER'S MEMORANDUM OF LAW IN**
**<u>SUPPORT OF ITS PETITION TO STAY ARBITRATION</u>**

SIMPSON THACHER & BARTLETT LLP
*Attorneys for Petitioner Industrial Risk Insurers*
425 Lexington Avenue
New York, NY 10017-3954
Phone:  (212) 455-2000
Fax:      (212) 455-2502

Petitioner, Industrial Risk Insurers ("IRI"), respectfully submits this memorandum of law, Declaration of Thomas J. Welling dated April 8, 2010, and exhibits thereto, in support of its Petition for an Order staying arbitration proceedings initiated prematurely and improperly by Respondent, 7 World Trade Center, L.P. ("7 WTC").

## PRELIMINARY STATEMENT

Petitioner IRI respectfully requests this Court's intervention to stay arbitration proceedings prematurely initiated by the Respondent 7 WTC pursuant to arbitration procedures that are in direct violation of the terms of the parties' agreement to arbitrate certain issues. Absent a stay, 7 WTC's improper and unilateral actions will cause irreparable prejudice to IRI.

Respondent's Demand for Arbitration and Notice of Intention to Arbitrate ("Arbitration Demand") is a premature attempt to adjudicate a potential and theoretic insurance coverage dispute regarding how IRI allocates proceeds it may or may not obtain as part of a settlement agreement (the "Subrogation Settlement")[1] amongst the claims it paid on behalf of its various underlying insureds. By its very terms, Respondent's Arbitration Demand is premature at best. If and when, the Subrogation Settlement is approved and IRI actually receives monies from the Aviation Defendants, then and only then will IRI know the actual amount of funds available for allocation. Only when the actual amount of available funds is known, including the amount of applicable expenses, will IRI be able to allocate any such monies amongst the claims it paid on behalf of its various underlying insureds. Once a certain amount has been allocated to claims paid to 7 WTC, then and only then, can it be definitively determined how much money 7 WTC is entitled to, which will be dictated by the terms and conditions of 7 WTC and IRI's 2005

---

[1]     This Subrogation Settlement was entered into between certain defendants (the "Aviation Defendants") and subrogation plaintiffs in *In re September 11 Litigation*, 21 MC 101 (AKH). This action addresses claims brought by property owners whose property was damaged as a result of the September 11 attack ("Subrogation Action").

Settlement Agreement ("7WTC/IRI Settlement Agreement") including a determination of applicable expenses.  As a result, Respondent's respective rights with regard to the payment of monies for 7 WTC's claim are simply not ripe for adjudication.  The alleged breach of contract by IRI stated in the Arbitration Demand cannot possibly have occurred yet and there is no indication it will ever occur.  Likewise, the declaration of rights sought cannot be properly adjudicated, much less enforced, at least until the Subrogation Settlement has been approved by this Court.

Even if the Subrogation Settlement is approved, Respondent's Arbitration Demand must be stayed until this Court resolves Respondent's[2] contemporaneously filed complaint for declaratory relief against IRI and other similarly situated insurers filed in this Court ("Declaratory Judgment Action") in *World Trade Center Properties LLC, et al. v. Great Lakes Reinsurance (UK) PLC, et al.*, No. 10 CV 1642 (AKH) (S.D.N.Y. filed March 1, 2010).  The allegations and claims for relief contained in the Arbitration Demand, as well as the information sought, are inextricably linked to those set forth in the Declaratory Judgment Action.  A decision in either the arbitration action or the Declaratory Judgment action will inevitably affect the rights and obligations of the parties in both actions.  Accordingly, the Arbitration Demand must be stayed, at least until final resolution of the Declaratory Judgment Action has been reached, to ensure, *inter alia*, that this Court retains jurisdiction of matters before it, that inconsistent results are avoided and that valuable judicial resources will not be wasted.

---

[2] While 7 WTC is not a party to the Declaratory Judgment Action, upon information and belief, 7 WTC is a subsidiary or affiliate of, or is associated, owned or controlled by Silverstein Properties, Inc.  World Trade Center Properties, LLC, 1 World Trade Center LLC, 2 World Trade Center LLC and 4 World Trade Center LLC (collectively, "WTCP") filed the declaratory action.  Upon information and belief, WTCP are subsidiaries or affiliates of, or are associated, owned or controlled by Silverstein Properties, Inc.

Even assuming 7 WTC's Arbitration Demand becomes ripe for adjudication, Court intervention is necessitated by Respondent's unilateral selection of an arbitration administrator and arbitration rules (the "Arbitration Administrator")[3] in blatant violation of the terms of the parties' agreement to arbitrate (the "Arbitration Clause").

It is an age-old axiom of arbitration law, that arbitration requires mutual consent. There is absolutely no reading of the Arbitration Clause by which it can be inferred that either party consented to arbitration pursuant to whatever arbitration procedures the other party unilaterally chooses. Absent this Court's intervention IRI will suffer irreparable harm as a result of Respondent's unilateral attempt to impose an Arbitration Administrator without consulting IRI.

Accordingly, Petitioner respectfully requests that this Court enter an Order staying the arbitration proceedings initiated by Respondent against Petitioner, at least until IRI has received funds from the Aviation Defendants and the concurrent Declaratory Action is resolved. In the alternative, Petitioner respectfully requests that this Court enter an Order staying the arbitration and directing the parties to mutually agree to an appropriate Arbitration Administrator. IRI respectfully requests that this Court retain jurisdiction over this matter in order that, the Court can, failing mutual agreement, enter an Order directing the parties to arbitrate their dispute before a panel chosen by this Court and under rules to be established by the selected arbitration panel.

---

[3]      7 WTC's unilateral selection of an Arbitration Administrator would set all the rules and procedures that IRI must abide by during the course of the arbitration, including but not limited to the arbitration body that will oversee the proceeding, the number and identity of the arbitrators, the scope of discovery, and the rules governing the hearing.

## BACKGROUND

Petitioner respectfully refers the Court to the detailed factual background set forth in the Petition to Stay Arbitration, filed contemporaneously with this memorandum of law.

## ARGUMENT

A. **Respondent's Premature Arbitration Demand Must Be Stayed At Least Until the Issues Presented are Ripe for Consideration**

1. <u>Respondent's Arbitration Demand Will Not Be Ripe for Adjudication, If Ever, Until the Subrogation Settlement is Approved.</u>

Stripped of its pretense, Respondent's Arbitration Demand is manifestly for the purpose of deciding a potential theoretic insurance coverage dispute regarding the proper allocation of proceeds IRI, and other similarly situated plaintiffs, may or may not obtain as part of the Subrogation Settlement with the Aviation Defendants in an action arising out of the Subrogation Action. *See* Exs. A (Demand for Arbitration) & B (Notice of Intention to Arbitrate).[4] This Subrogation Settlement has not been approved and is pending before this Court for approval. It does not address the allocation issues upon which Respondent's coverage dispute is predicated. The Subrogation Settlement solely addresses the aggregate monies paid by the Aviation Defendants to the subrogation plaintiffs, and how the aggregate settlement amount is to be distributed amongst the various subrogation plaintiffs. The Subrogation Settlement does not address how each individual subrogation plaintiff is to use any proceeds received. Accordingly, the Subrogation Settlement is a predicate to adjudicating the issues presented in Respondent's Arbitration Demand, not the reverse.

---

[4] All references to "Ex. __" herein refer to the contemporaneously filed Declaration of Thomas J. Welling, dated April 8, 2010 ("Welling Decl.").

How IRI, or for that matter any other plaintiff, uses the proceeds it may receive from the Subrogation Settlement is a separate issue. IRI's internal allocation decision will be decided after, and is wholly separate and apart from the Subrogation Settlement. Respondent's Arbitration Demand relates solely to the latter – IRI's internal allocation decision regarding monies it may receive from the Subrogation Settlement. IRI, however, has not received any monies from the Aviation Defendants. Until the actual amount of available funds, less applicable expenses, is known, IRI cannot determinatively allocate any such monies amongst the claims it paid on behalf of its various underlying insureds.

If and when, the Subrogation Settlement is approved, and IRI actually receives monies from the Aviation Defendants, then and only then will IRI be able to allocate any such monies received internally amongst the claims it paid on behalf of its various underlying insureds. In other words, until it is definitively determined how much money, if any, IRI will receive, determinations cannot be made as to precisely how much will be allocated to 7WTC's paid claim and, after taking into account expenses, how much money, pursuant to the terms and conditions of the 7WTC/IRI Settlement Agreement, 7 WTC is actually entitled to receive. In short, Respondent's entire predicate to the claims asserted in its Arbitration Demand rests upon the allocation of funds that have not been, nor may ever be, received by IRI. As a result, until IRI receives money from the Subrogation Settlement, Respondent's respective rights with regard to the payment of monies for 7 WTC's claim are simply not ripe.

Where, as here, the issues to be arbitrated are not ripe for adjudication, the arbitration demand may be stayed on prematurity grounds. *See Polesky v. GEICO Ins. Co.,* 661 N.Y.S.2d 639, 640 (2d Dept. 1997) (granting stay of arbitration on appeal where insureds "failed to accept the other insurer's settlement offer, the [insureds'] underinsurance claim was premature

and the cross petition should have been granted to the extent of staying arbitration until such time as the petitioners accept payment from the primary insurer"); *see also Matter of State Farm Mut. Auto. Ins. Co.,* 607 N.Y.S.2d 838, 838 (4th Dept. 1994) (granting stay of arbitration on appeal because insured's demand for arbitration of uninsured motorist claim was premature, because the "settlement ha[d] not been consummated" even though "offer of settlement to pay full policy limits ha[d] been made by . . . insurer of the owner of the other car involved in the accident"); *Garcia by Mercado v. Mercado,* 598 N.Y.S.2d 259, 259–60 (1st Dept. 1993) (holding plaintiff's request to arbitrate underinsured motorist claim was premature, because claim "must await the disposition, by settlement or judgment, of the claims" exhausting limits of liability of all bodily injury); *Matter of CNA Ins. Companies,* 566 N.Y.S.2d 101, 101 (3d Dept. 1991) (affirming stay of arbitration under CPLR article 75, holding that the "demand for arbitration was premature and that respondent had no arbitrable claim").

Respondent's Arbitration Demand is premature to the extent it seeks a declaration of allocation rights regarding monies that have not been paid, nor been authorized to be paid, to IRI.  Further, to the extent IRI does receive monies from the Aviation Defendants, IRI does not dispute that 7 WTC will eventually be entitled to recoup, less applicable expenses, certain monies pursuant to the terms and conditions of the 7WTC/IRI Settlement Agreement. Accordingly, Respondent's claims must be stayed until such time as the Settlement Agreement is final, IRI has actually been paid monies, IRI has had the opportunity to make the internal allocation that is required amongst the claims IRI paid on behalf of its various underlying insureds, and IRI is in a position to make any required payments to 7 WTC pursuant to the 7WTC/IRI Settlement Agreement.

2.   <u>Respondent's Arbitration Demand Must Be Stayed to Avoid Inconsistent Results with Respondent's Contemporaneously Filed Declaratory Judgment Action in this Court</u>

The allegations and claims for relief contained in the Arbitration Demand are inextricably linked to those set forth in Respondent's contemporaneously filed complaint in this Court, seeking declaratory relief against IRI and other similarly situated insurers, *World Trade Center Properties LLC, et al. v. Great Lakes Reinsurance (UK) PLC, et al.*, No. 10 CV 1642 (AKH) (S.D.N.Y. filed March 1, 2010).  Both actions seek clarification of certain alleged rights concerning how money received by IRI from the Aviation Defendants is to be allocated.  Accordingly, a decision in either the arbitration action or the Declaratory Judgment Action will inevitably affect the rights and obligations of the parties in both actions.

The Declaratory Judgment Action seeks a declaration that Respondent is entitled to obtain certain information from IRI and other similarly situated insurers.  Likewise, the Arbitration Demand seeks an order from the unilaterally appointed Arbitration Administrator providing for disclosure of this very same information.  As a result, permitting both actions to proceed will risk inconsistent results.  Because the Arbitration Demand is a thinly veiled attempt to circumvent this Court's jurisdiction in the Declaratory Judgment Action, the Arbitration Demand must be stayed, at least until final resolution of the Declaratory Judgment Action has been reached.  A stay will ensure, *inter alia,* that this Court retains jurisdiction of matters before it, that inconsistent results are avoided and that valuable judicial resources will not be wasted.

Pursuant to this Court's absolute power to control its own docket, this Court has the power to stay the arbitration to protect its own judgments, prevent re-litigation, and avoid inconsistent results.  *See* 28 U.S.C. § 1651 (2006) ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law"); *see also L.F.*

*Rothschild & Co. v. Katz*, 702 F.Supp. 464, 467–68 (S.D.N.Y. 1988) (where two arbitrations

were started to resolve a dispute under an employment agreement, the court stayed the later filed

one, finding that to allow both to go forward would risk "inconsistent outcomes."); *Petroleum*

*Helicpoters, Inc. v. Boeing-Vertol Co.*, 478 F.Supp. 84, 86 (E.D. La. 1979) (staying arbitration

where duplicative litigation could lead to "inconsistent fact-finding between the arbiter and the

court.").

Therefore, Respondent's Arbitration Demand must be stayed, at least until the

Declaratory Judgment is resolved.

**B.    IRI will Suffer Irreparable Harm Unless Respondent's Arbitration Demand, which Attempts to Impose an Arbitration Administrator and Rules Unilaterally Chosen by Respondent, Is Stayed**

It is axiomatic that arbitration requires mutual consent of the parties.  Yet,

Respondent's Arbitration Demand seeks to force arbitration pursuant to an Arbitration

Administrator of its sole choosing, in the face of unequivocal objections by IRI.  A stay is

necessary to ensure that any arbitration that is needed and may occur in the future between the

parties is conducted pursuant to an Arbitration Administrator mutually agreed to by the parties.

Absent a stay Respondent's bad faith attempt to strip IRI of its contractual rights would cause

IRI irreparable harm.

1.    This Court Has Wide Discretion to Grant a Stay of Arbitration

This Court has broad authority to issue a stay of arbitration, pursuant *inter alia,* to

the Federal Arbitration Act ("FAA").  *See* 9 U.S.C. §4 (2006); *see also SATCOM Int'l Group*

*PLC v. ORBCOMM Int'l Partners L.P.*, 49 F.Supp.2d 331, 342 (S.D.N.Y. 1999), *citing Societe*

*Generale de Surveillance v. Raytheon European Mgmt. Sys. Inc.*, 643 F.2d 863, 868 (1st Cir.

1981) (noting that the First Circuit has "unequivocally" recognized the authority of the federal

courts to stay arbitration under the FAA); *Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263,

266 n.3 (2d Cir. 1996), *abrogated on other grounds by Vaden v. Discover Bank*, 129 S.Ct. 1262

(2009) (noting that several courts have held section 4 may be applied to stay arbitration in

"appropriate circumstances").

   Federal courts have enjoined or stayed arbitration under the FAA for a variety of

reasons. *See Maryland Cas. Co. v. Realty Advisory Bd.*, 107 F.3d 979, 985 (2d Cir. 1997)

(affirming injunction of arbitration when a collective bargaining agreement did not cover the

dispute at issue); *Zwitserse Maatschappij Van Levensverzekering en Lijfrente v. ABN Int'l*

*Capital Markets Corp.*, 996 F.2d 1478, 1480–81 (2d Cir. 1993) (affirming stay of arbitration

when one party's discovery activities amounted to waiver); *L.F. Rothschild & Co. v. Katz*, 702

F.Supp. 464, 468 (S.D.N.Y. 1988) (enjoining arbitration when the parties commenced competing

arbitrations); *Ins. Co. of N. America v. Pub. Serv. Mut. Ins. Co.*, No. 08CV7003 (HB), 2008 WL

5205970, at *3 (S.D.N.Y. Dec. 12, 2008), *vacated by* No. 08CV7003, 2009 WL 2381854

(S.D.N.Y. July 29, 2009) (enjoining arbitration to implement a procedure to be followed upon

the resignation of an ill arbitrator; vacated when arbitrator was found to be in good health).

   Additionally, this Court is authorized to stay arbitration under the CPLR.  The

CPLR, *inter alia,* permits this court to stay arbitration upon application of a party if the party

seeking arbitration has "not complied with" the terms, both explicit and implied, of the

arbitration agreement. *See* N.Y. C.P.L.R. 7503(b)(2) (Consol. 2009); *see also Blatt v. Sochet*,

199 A.D.2d 451, 453 (N.Y. App. Div. 1993) (staying rabbinical arbitration when agreement

called for resolution by the American Arbitration Association, noting "the parties' agreement

does not contemplate rabbinical arbitration"); *Allstate Ins. Co. v. Kuper*, 520 N.Y.S.2d 591, 591

(2d Dept. 1987) (granting a stay of arbitration when parties failed to comply with a provision of

arbitration agreement regarding mutual consent to proceed before arbitration body); *see also*

*Nat'l Grange Mut. Ins. Co. v. Vitebskaya*, 766 N.Y.S.2d 320, 323–24 (N.Y. Sup. Ct. 2003) (permanently staying arbitration when insurance coverage not triggered due to intentional act).

Arbitration is a matter of contract, and is governed by general principles of contract law. *See AT&T Technologies, Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 648 (1986). Like any contractual obligation, an arbitration agreement requires mutual assent to be binding. *See* Restatement (Second) of Contracts §17 (1981); *Edelman v. Poster*, 894 N.Y.S.2d 398, 400 (1st Dept. 2010). No party can be forced to submit a dispute to an arbitration process unless he has agreed to do so. *AT&T Technologies*, 475 U.S. at 648. Where the parties have agreed to arbitrate disputes, the party seeking arbitration must comply with the arbitration agreement. *See, e.g., Constitution Reinsurance Corp. v. Republic Western Ins. Co.*, No. 98 CIV. 7208 (HB), 1999 WL 126462, at *1 (S.D.N.Y. Mar. 10, 1999) (noting that courts require parties to arbitrate "in accordance with the terms of the agreement") (citation omitted). Where an agreement does not specifically state the arbitration procedures to be followed, it can be inferred that the parties' intent was to negotiate in good faith to come to a mutual agreement about the process when the need for arbitration arises. *See, e.g., Scher v. Bear Stearns & Co.*, 723 F.Supp. 211, 214 (S.D.N.Y. 1989) ("As with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.") (citation omitted); Restatement (Second) of Contracts §205 (1981) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.").

2.   <u>Respondent's Unilateral Selection of an Arbitration Administrator Violated the Parties' Arbitration Agreement</u>

In its Arbitration Demand, 7 WTC relies upon the IRI/7WTC Settlement Agreement to support its Arbitration Demand (the "Arbitration Clause").

> The Parties agree that, in the event there is a dispute arising out of the terms and conditions of this Agreement, such dispute shall be resolved through binding arbitration and not litigation.

Ex. A. This clause does not give either party the sole authority to select the Arbitration Administrator. Indeed, there is no evidence of agreement amongst the parties to arbitrate disputes before a particular arbitrator, nor pursuant to any particular set of rules. The Arbitration Clause, therefore, requires the parties to agree to the terms and procedures of the arbitration process before a "dispute" can be "resolved through binding arbitration." 7 WTC did not comply with this requirement.

IRI did not consent to Respondent unilaterally and wrongfully attempting to appoint an Arbitration Administrator of its own choosing. Indeed, when IRI suggested reasonable alternatives in an attempt to reach mutual agreement between the parties, 7 WTC flatly refused to even engage in a meaningful discussion. Respondent's failure to comply with the arbitration agreement necessitates a stay of arbitration, to ensure Respondent's lack of good faith does not permanently prejudice IRI. *See* CPLR 7503(b) (2009); *Blatt v. Sochet*, 199 A.D.2d 451, 453 (N.Y. App. Div. 1993); *Allstate Ins. Co. v. Kuper*, 520 N.Y.S.2d 591, 591 (2d Dept. 1987); *see also Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263, 266 n.3 (2d Cir. 1996), *abrogated on other grounds by Vaden v. Discover Bank*, 129 S.Ct. 1262 (2009).

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that this Court enter an Order: (i) staying the Arbitration, at least until if and when the Subrogation Settlement is approved, and the Declaratory Judgment Action is resolved; or (ii) in the alternative, staying the Arbitration pending mutual consent of the parties concerning the Arbitration Administrator; or (iii) in the alternative, compelling arbitration pursuant to procedures established by the Court; and (iv) granting such other and further relief as the Court may determine is just and proper.

Dated:  April 8, 2010

SIMPSON THACHER & BARTLETT LLP

By: _____
Barry Ostrager
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
Email: bostrager@stblaw.com

Mary Kay Vyskocil
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
Email: mvyskocil@stblaw.com

*Attorneys for Petitioner Industrial Risk
Insurers*